### GRIFFITH v. BERKSHIRE POWER CO.

(Circuit Court, D. Connecticut. April 21, 1909.)

#### No. 1,208.

REFORMATION OF INSTRUMENTS (§ 19*)—GROUNDS OF REFORMATION—MUTUAL MISTAKE OF FACT.

Complainant contracted to convey the right of flowage over his land by a dam to be built by defendant of a stipulated height for the sum of $2,500. It was clearly shown by the evidence that when the contract was made both parties were of opinion that the dam would in no event cause the flooding of more than 12 acres of complainant's land, but when built it was found that it caused the flooding of much more than that amount. *Held*, that complainant was entitled to have the contract reformed on the ground of mutual mistake so as to apply only to the 12 acres intended, leaving him the right to recover damages for the additional flowage.

[Ed. Note.—For other cases, see Reformation and Instruments, Cent. Dig. § 75; Dec. Dig. § 19.*]

In Equity. On amended bill.
See, also, 158 Fed. 219.

C. Walter Artz, Henry F. Parmelee, and Henry H. Townshend, for complainant.
Gross, Hyde & Shipman, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PLATT, District Judge. Exhibit A, which the complainant now asks to have reformed on the testimony before the court, sets forth, in substance, that Griffith owned "certain lands" bordering on the Housatonic river, in Sheffield, Mass., and Roraback or his nominees expected to build a dam across the river at Canaan, Conn.; that Roraback or his nominees might require by reason of said dam to overflow "certain lands" of the said Griffith. It was therefore agreed between Griffith and Roraback:

"That after the completion of said plant and the overflow of the lands of said Griffith in the manner hereinbefore set forth, the said Roraback or his nominees shall pay or cause to be paid to the said Griffith the sum of $2,500 in full payment and liquidation of all damages which shall be occasioned to the said Griffith by reason of the erection of said dam and the flowing perpetually of his land; provided, however, that said dam shall not exceed eight feet in height above the mean level of the flow of the Housatonic river."

It was further provided that, if said sum was not paid within 30 days after "such flowing of said land," the right to "flood the lands in the manner hereinbefore set forth" shall end and terminate, and the parties causing the flooding shall be considered trespassers. If it was paid, Griffith was to give a good deed of such right to flow. It was signed, executed, and recorded on December 1, 1904.

The testimony shows plainly that on that date both Roraback and Griffith were of the opinion that in no possible contingency could the raising of the dam at Canaan to a height not exceeding 8 feet above mean level cause the flooding of over 12 acres of said Griffith's lands. As a matter of fact, it was found after the dam was completed that the number of acres of the Griffith land which was flooded was very largely in excess of 12 acres. The complainant insists that the certain lands mentioned in said agreement were those below a point on the Konkapot river opposite the clump of trees about 28 rods below Griffith's farm bridge, and did not include over 12 acres of the farm.

If Roraback knew that the raising of the dam would flood said lands much in excess of 12 acres, and kept that knowledge from Griffith, it is clear that the agreement would have been fraudulently obtained. Such an allegation appears in the original bill, and, if it were supported by proof, the entire controversy in this and the companion cases would have gone the complainant's way long ago. There is no scintilla of evidence to support the allegation, and counsel so admitted in the earlier stages of this general controversy. The mistake of fact is admitted, however, on all sides.

There is nothing to the point that the present defendant is an innocent purchaser for value. From the day of Roraback's first appearance on the Massachusett's shores of the Housatonic river up to this moment, the connection between himself and the defendant has been such as to make them jointly responsible for all that has been done.

On the evidence, the agreement must be reformed in accordance with the prayer of the bill. Mr. Griffith's own story shows plainly his reason for jumping at the $2,500 settlement. While he and Roraback were discussing the appraisal question, the latter went out to

inquire as to the character of Curtis, an engineer proposed by Griffith as one of the appraisers. While waiting for Roraback to come back, Griffith and Collins talked the matter over. They were afraid that when the closing of the dam had set the water back on Griffith's land all the evil effects of undersoaking would not be at first appreciated, and that an appraisal at such a time might be inadequate. For that reason Griffith thought it better to clinch the bargain then and there, and did so. He displayed the proverbial acumen of the Yankee farmer and got what looked to be the long end of the bargain. But it must not be forgotten that both parties were bargaining on a supposed maximum flowage of 12 acres. If there had been even a floating suspicion in Griffith's mind that the actual flooding would be very much in excess of the number of acres under discussion, it is impossible that Exhibit A would have been signed. His smartness in the trade he thought he was making ought not, however, to be charged against him in reaching the justice of the real transaction. Having reformed the contract, the only real question is whether he ought to be sent to a law court to get the $2,500 due him for the 12 acres; but inasmuch as he requests the aid of the equitable arm of this court to find out what his additional damage is, and to grant him the appropriate relief with respect thereto, and as it will lessen expense and save another suit to include what has already been bargained for, the matter may proceed as he requests.

Let the master be appointed.